GABELLI FUNDS, INC. & CONSOLIDATED SUBSIDIARIES, f.k.a. THE GABELLI GROUP, INC. & CONSOLIDATED SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gabelli Funds v. Commissioner
Docket No. 25832-92
United States Tax Court
T.C. Memo 1995-68; 1995 Tax Ct. Memo LEXIS 69; 69 T.C.M. (CCH) 1879; February 9, 1995, Filed *69 For petitioner: Donald F. Wood, Robert M. Hopson, and Henry Binder. For respondent: Steven R. Winningham, Drita Tonuzi, and Gregory S. Nickerson. WELLS
WELLS
MEMORANDUM OPINION WELLS, Judge: This matter is before the Court on respondent's motion for partial summary judgment pursuant to Rule 121[1] and petitioner's cross-motion for partial summary judgment. Both petitioner and respondent submitted memoranda and accompanying affidavits in support of their positions. The issue before us for partial summary judgment arises out of a section 534(b) notification sent by respondent to petitioner regarding petitioner's accumulated earnings and profits and its reasonable business needs for the taxable years is issue. We must decide: (1) Whether respondent rescinded the section 534(b) notification, and if not, (2) *70 whether petitioner submitted a timely section 534(c) statement. [2]
The parties do not dispute the following material facts which we have taken from the parties' moving papers. Petitioner is a consolidated group of corporations that owns and controls the business operations of consolidated subsidiaries with its principal place of business in Rye, New York. During May 1989, respondent commenced an examination of petitioner's taxable year ended October 1987 in connection with a refund claim filed by *71 petitioner. The refund claim related to a net operating loss carryback and, because the refund amount exceeded $ 200,000, an examination was required in order to prepare a report for the Joint Committee on Taxation as mandated by section 6405. The examination was conducted by Revenue Agent Gregory Boratgis. On March 27, 1991, a final examination meeting was held and was attended by Mr. Boratgis, his group manager, Robert C. Carroll, and petitioner's accountants and representatives from the accounting firm of Ernst & Young, William Erosh and Harris Horowitz. Mr. Boratgis approved the refund claim, but proposed the imposition of an accumulated earnings tax under section 531 for each of petitioner's taxable years ended October 31, 1984, 1987, 1988, and 1989. Mr. Boratgis gave Mr. Erosh and Mr. Horowitz several consent forms (Forms 872) to extend the period of limitations for taxable years ended 1987 and 1988. On April 4, 1991, Mr. Boratgis contacted Mr. Erosh to ask whether petitioner had signed the consent forms. Mr. Erosh informed Mr. Boratgis that petitioner was apparently not going to sign the waivers. [3] Based on the conversation with Mr. Erosh, Mr. Boratgis began the process *72 of closing the case as "unagreed", thus preparing for the issuance of a "notification" pursuant to section 534(b) and ultimately a notice of deficiency. A notification sent pursuant to section 534(b) may also be referred to as a 60-day letter. On or about May 12, 1991, petitioner retained Robert Jacobs of Milbank, Tweed, Hadley & McCloy to handle all dealings with respondent. Mr. Jacobs was to be assisted by Eliot Meyers. On July 9, 1991, by certified mail, respondent mailed to petitioner a section 534(b) notification covering taxable years ended October 31, 1984, 1987, 1988, and 1989 (the section 534(b) notification). The section 534(b) notification read, in pertinent part, as follows: We propose to issue you a Notice of Deficiency for the above tax years for the tax that section 531 of the Internal *73 Revenue Code requires be paid on accumulated earnings. If you believe your earnings and profits did not accumulate beyond the reasonable needs of your business, you may submit a statement explaining your reasons and include facts sufficient to show the basis for them. We can then determine whether the Notice of Deficiency should be issued. The statement should be in triplicate, and the original must be certified as true and correct by an authorized officer of the corporation. Please submit it to us within 60 days of the date of this letter.
On July 23, 1991, Mr. Meyers contacted Mr. Boratgis for the first time in order to inquire as to the reason why petitioner had been sent the section 534(b) notification instead of a preliminary notice of deficiency. A preliminary notice of deficiency is commonly referred to as a 30-day letter. Mr. Boratgis informed Mr. Meyers that the section 534(b) notification was issued because petitioner had refused to execute consents to extend the period of limitations beyond October 31, 1991. Later that day, Mr. Meyers again contacted Mr. Boratgis in order to request that respondent prepare consents to be signed by petitioner. On July 25, 1991, *74 Mr. Boratgis obtained petitioner's administrative file from the review office and prepared consents for petitioner's execution. Mr. Boratgis then hand delivered the consents to Mr. Meyers and Mr. Jacobs. On July 29, 1991, Mr. Meyers transmitted the executed consents to Mr. Boratgis along with a letter requesting (1) the issuance of a 30-day letter and (2) the rescission of the section 534(b) notification. During the following week, Mr. Boratgis coordinated the issuance of a 30-day letter with the reviewing office and also attempted to find authority for petitioner's request for a letter rescinding the section 534(b) notification. Mr. Boratgis was unable to find any procedures, guidelines, or delegation orders authorizing any employees of the Manhattan district to rescind by letter, or otherwise, a notification sent pursuant to section 534. On August 8, 1991, Mr. Boratgis received a handwritten note from Mr. Carroll confirming that there were apparently no procedures for issuing a letter rescinding a notification sent pursuant to section 534(b). Mr. Carroll's note further informed Mr. Boratgis that it was Technical Adviser Larry Hickey's opinion that respondent's acceptance of *75 consents to extend the period of limitations, coupled with the issuance of the 30-day letter, effectively rescinded the section 534(b) notification. On August 12, 1991, Mr. Meyers again spoke to Mr. Boratgis regarding petitioner's requests for the issuance of a 30-day letter and a rescission of the section 534(b) notification. Mr. Boratgis informed Mr. Meyers that a 30-day letter would be issued, but that no letter rescinding the section 534(b) notification would be sent. While Mr. Meyers pressed Mr. Boratgis for a written response to the rescission request, Mr. Boratgis explained that he did not have the authority to rescind the section 534(b) notification. During the course of their telephone conversation, Mr. Boratgis informed Mr. Meyers of the note that he had received from his group manager, Mr. Carroll, and, at Mr. Meyers' request, Mr. Boratgis agreed to send a redacted copy of the note to Mr. Meyers. The note sent to Mr. Meyers was a copy of the handwritten note to Mr. Boratgis from Mr. Carroll and read, in part, as follows: Greg
When you brought 872's to Review -- did they pull case to issue 30DL? They should . . . [remainder of sentence redacted]. According *76 to [name redacted] acceptance of 872's and issuance of 30DL in effect rescinds 60DL. He sees no need to issue a recission [sic] ltr. There is nothing that says we do this. However, remind [name redacted] that ltr requests rescission. [redacted]
Below the copy of the note, Mr. Boratgis wrote: To -- Elliot [sic] Meyers, Attorney 8/12/91 From -- Gregory Boratgis, Revenue Agent The above memo shows the effect of the 30 day letter will be, in effect, rescission of the 60 day letter -- But remember this refers to the letter sent from District -- This does not preclude another 60-day letter being sent after case goes to Appeals.
On the same day, August 12, 1991, a 30-day letter was issued to petitioner for the taxable years in issue. On August 16, 1991, Mr. Jacobs sent a letter to the chief of the examination division requesting a 30-day extension for filing a protest in response to the 30-day letter. On August 23, 1991, respondent granted petitioner's request for an extension for filing a protest until October 12, 1991. On September 26, 1991, Mr. Meyers mailed a letter to the chief of the examination division requesting another 30-day extension for filing a protest *77 in response to the 30-day letter. On October 16, 1991, respondent granted petitioner a second extension until November 16, 1991, for filing a protest. On November 15, 1991, Mr. Jacobs sent a letter to the district director, informing respondent that petitioner no longer intended to file a protest and requesting the prompt mailing of a section 534(b) notification. After discussing petitioner's request with Mr. Meyers during December 1991, Dennis Lapiotis, chief of the special operations section of the review staff of the Manhattan district, mailed a letter dated December 31, 1991, to Mr. Meyers which read, in pertinent part, as follows: Dear Mr. Meyers: This is in response to our telephone conversation of December 30, 1991, regarding Gabelli Funds Inc. & Consolidated Subs, for the tax years ended October 31, 1984, October 31, 1987, October 31, 1988 and October 31, 1989. Since we have issued letter 572 on July 9, 1991 and a 30 Day letter on August 12, 1991, a written response is requested to either letter. Please provide this response by January 15, 1992. No additional extensions or preliminary letters will be issued. If we do not receive a formal response by the *78 above date, this office will issue a statutory notice of deficiency for the above taxpayer. If there are any questions please contact the person whose name and number appear above. We trust that this resolves the matter. /s/ Dennis Lapiotis Chief, Special Operations Quality Measurement Staff
In accordance with Mr. Lapiotis' letter, no additional section 534(b) notification was issued. Petitioner filed a statement pursuant to section 534(c) on or before January 15, 1992 (the section 534(c) statement). A notice of deficiency was issued on October 8, 1992, which included respondent's determination that petitioner is liable for accumulated earnings tax under section 531 in the following amounts: Taxable Year
Deficiency
1984
$ 684,861  1987
593,704
1988
1,969,009
1989
2,667,714
Summary judgment is appropriate only where the pleadings and other evidence show that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law". Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). A partial summary adjudication may be made which does not dispose of all of the issues in the case. *79 Rule 121(b). The moving party bears the burden of proving that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The moving party may discharge its burden by proving that "there is an absence of evidence to support the nonmoving party's case". Celotex Corp. v. Catrett, supra at 325. For purposes of summary judgment, inferences drawn from the facts on which the moving party relies are to be resolved in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Naftel v. Commissioner, supra at 529; Hoeme v. Commissioner, 63 T.C. 18, 20 (1974) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)). If there exists sufficient doubt as to the facts in issue, a motion *80 for summary judgment must be denied. Espinoza v. Commissioner, supra at 416. The nonmoving party is not required to negate the moving party's claims, but merely to show there is a genuine issue for trial. Celotex Corp. v. Catrett, supra at 323-324. "Summary assertions and conclusory allegations [by the nonmoving party] are simply not enough evidence to raise a genuine issue of material fact." Daniels v. Commissioner, T.C. Memo. 1994-591; see also Rule 121(d). Section 534 provides an exception to the general rule regarding the taxpayer's burden of proof in a case before this Court. Section 534 provides in pertinent part as follows: SEC. 534(a). General Rule. -- In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall -- (1) if notification has not been sent in accordance with subsection (b), be on the Secretary, or (2) if the taxpayer *81 has submitted the statement described in subsection (c), be on the Secretary with respect to the grounds set forth in such statement in accordance with the provisions of such subsection.
(b) Notification by Secretary. -- Before mailing the notice of deficiency referred to in subsection (a), the Secretary may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531. (c) Statement by Taxpayer. -- Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary may prescribe by regulations, [4] the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.
*82 In the instant case, petitioner contends that respondent has the burden of proof under section 534(a)(1) because the section 534(b) notification was rescinded, and no new notification was issued. Specifically, petitioner contends that the section 534(b) notification was rendered void ab initio by the mutual agreement of the parties, by the conduct of the parties, and by implication, as a result of the executed consents and the issuance of the 30-day letter. Respondent contends, inter alia, that the section 534(b) notification was not rescinded. We agree with respondent. Although it is clear that petitioner requested a rescission of the section 534(b) notification, the facts establish that respondent's agents unequivocally indicated that they would not rescind it. Indeed, on August 12, 1991, Mr. Boratgis specifically informed Mr. Meyers that respondent would not issue a letter rescinding the section 534(b) notification. When Mr. Meyers pressed Mr. Boratgis for a written response, Mr. Boratgis instructed Mr. Meyers that he did not have the authority to rescind the section 534(b) notification. Additionally, Mr. Boratgis told Mr. Meyers that he had received a note from his group *83 manager which included Technical Adviser Hickey's opinion that the execution of consent forms and the issuance of a 30-day letter would "in effect" rescind the section 534(b) notification. The note, however, also stated that there was "no need to issue a recission [sic] ltr. There is nothing that says we do this." Finally, Mr. Lapiotis' request for a response to the section 534(b) notification in his December 31, 1991, letter to Mr. Meyers further indicates that the section 534(b) notification had not been rescinded. Consequently, we hold that the section 534(b) notification was not rescinded by respondent. [5]
Petitioner's alternate contention is that, even if the section 534(b) notification was not rescinded, the burden of proof is on respondent under *84 section 534(a)(2) because petitioner's section 534(c) statement was timely. Petitioner primarily relies on our decision in Manson Western Corp. v. Commissioner, 76 T.C. 1161 (1981). In Manson Western, the Commissioner mailed the notice of deficiency prior to the date the section 534(c) statement was due. The Commissioner had mailed a section 534(b) notification to the taxpayer which explained that the Commissioner intended to issue a notice of deficiency for accumulated earnings tax pursuant to section 531. Prior to the expiration of the 60-day period, respondent issued a notice of deficiency. The taxpayer did not respond to the section 534(b) notification. The Commissioner contended that the burden of proof was on the taxpayer because the Commissioner had issued a timely section 534(b) notification, and the taxpayer had failed to submit a section 534(c) statement. The taxpayer, however, argued that it should be excused from meeting the requirements of section 534(c) because the Commissioner mailed the notice of deficiency before the section 534(c) response was due. The taxpayer argued that because the statement contemplated by section 534(c) *85 was intended "to apprise * * * [the Commissioner] of reasons and supporting facts sufficient to undermine the wisdom of issuing a notice of deficiency", the submission of a section 534(c) statement subsequent to the issuance of a notice of deficiency would be meaningless. Id. at 1163. After reviewing the unambiguous language of section 534(b), which merely requires that the Commissioner mail the notification prior to sending the notice of deficiency, we stated that section 534 must be read to provide that if respondent decides to mail a section 534(b) notification, it may be mailed at any time before issuing the notice of deficiency and that, in that event, it is incumbent upon the taxpayer to respond whether or not he has received a notice of deficiency if the taxpayer wishes to attempt to shift the burden of proof. * * * [Id. at 1165.]
Despite our holding that the issuance of a notice of deficiency does not excuse a taxpayer from the requirement that a section 534(c) statement must be filed in order to place the burden of proof on the Commissioner, we recognized that the circumstances warranted special consideration *86 on account of the Commissioner's actions and fashioned a relief for the taxpayer. The Commissioner had sent the taxpayer a section 534(b) notification which clearly requested that the taxpayer submit a statement within 60 days to aid the Commissioner in determining whether a notice should be issued. During the response period, however, the Commissioner issued the notice of deficiency. On account of the Commissioner's early issuance of the notice of deficiency, we thought that the taxpayer reasonably assumed that it need not write a "meaningless" response to the section 534(b) notification. Id. at 1165. The linchpin of our holding for the taxpayer in Manson Western was the fact that the Commissioner had created confusion by issuing the notice of deficiency prior to the time the taxpayer was required to submit its section 534(c) statement. Because the taxpayer in Manson Western reasonably believed that respondent's actions had excused it from submitting a section 534(c) statement and because no prejudice would result if the time restrictions were extended, we gave the taxpayer an opportunity to submit a section 534(c) statement within 30 *87 days. Respondent contends that Manson Western is inapplicable to the instant case. Respondent contends that Manson Western mandates strict compliance with the timing requirements of section 534 such that "no intervening event, not even the issuance of a notice of deficiency, excuses the taxpayer from observing the requirement as to the time within which its section 534(c) statement should be filed". Additionally, respondent contends that the relief fashioned in Manson Western should be limited to that case. Respondent further contends that it was petitioner and not respondent who created any confusion as to the necessity of filing a section 534(c) statement, and petitioner's dilatory action prevents the application of any equitable relief. We do not agree. In the instant case, after respondent issued a section 534(b) notification, petitioner pursued settlement in respondent's Appeals Office. The parties then executed consents to extend the period of limitations, and respondent simultaneously issued a 30-day letter. The note from Mr. Boratgis sent along with the redacted copy of the note from Mr. Carroll further advised petitioner that another section 534(b) notification *88 could be issued at a later date if the case did not settle in Appeals. Petitioner's efforts were focused toward meeting the deadline for the submission of the protest with the hope of settling the matter in Appeals. When, prior to the extended deadline for filing the protest, petitioner informed respondent that it no longer intended to submit a protest and requested that a section 534(b) notification be issued, respondent unequivocally instructed petitioner to respond to the outstanding section 534(b) notification, or the 30-day letter, by January 15, 1992. Respondent specifically stated that "No additional extensions or preliminary letters will be issued." Petitioner obediently submitted the section 534(c) statement on or before the January deadline as instructed by respondent, and respondent issued the notice of deficiency 9 months later. At all times, petitioner complied with respondent's requirements. Petitioner neither behaved in a confusing manner nor employed dilatory tactics as suggested by respondent. We conclude from the record in the instant case that petitioner reasonably believed that the submission of a section 534(c) statement within 60 days of the section 534(b) *89 notification of July 9, 1991, would be meaningless in light of the fact that petitioner was in the process of filing a protest with respondent's Appeals Office and also in light of respondent's assurance to petitioner that another section 534 notification would be issued if the parties were unable to settle. The facts of the instant case present an even stronger case for relief than those in Manson Western Corp. v. Commissioner, 76 T.C. 1161 (1981). In Manson Western, an applicable revenue procedure potentially put the taxpayer on notice that it still had a duty to file a section 534(c) statement even though a notice of deficiency had been issued during the response period. In the instant case, however, petitioner had virtually no way of knowing that it was expected to submit a statement while in the process of pursuing a resolution in respondent's Appeals Office, especially in light of respondent's letter of December 31, 1991, which on its face appears to extend the deadline for submitting the section 534(c) statement until January 15, 1992. We find no prejudice to respondent in holding that the section 534(c) statement is timely under such *90 circumstances. Accordingly, we grant petitioner's motion to the extent that we hold that the section 534(c) statement was timely filed. [6]
To reflect the foregoing, An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Initially, petitioner filed a motion to shift the burden of proof from petitioner to respondent based on respondent's alleged rescission of the sec. 534(b) notification or, alternatively, on petitioner's submission of a timely and legally sufficient sec. 534(c)↩ statement. Subsequently, respondent filed the instant motion for partial summary judgment to dispose of the rescission issue and timeliness issue without any hearing. Petitioner then filed the instant cross-motion for partial summary judgment on such issues.
3. Mr. Boratgis' activity record states "Rep. Wm. Erosh informed R/A that it appears T/P (Mr. Bondi) will not sign waiver." Stephen G. Bondi has served as petitioner's "Vice President-Finance" since March 1989.↩
4. In the regulations, the Commissioner has prescribed 60 days. See sec. 1.534-2(d)(2), Income Tax Regs.↩
5. But see Beardsley v. United States, 126 F. Supp. 775, 777↩ (D. Conn. 1954) (holding that the Commissioner effectively withdrew a notice of disallowance by "going back in the process to a stage prior to the time for giving notice").
6. In light of our holding that the statement was timely under the reasoning and precedent established by Manson Western Corp. v. Commissioner, 76 T.C. 1161 (1981), we need not address petitioner's remaining arguments. The parties agree that should we decide that the sec. 534(b) notification was not rescinded, but that the sec. 534(c) statement was timely filed, a further hearing will be necessary on the issue of whether the statement is legally sufficient to shift the burden of proof to respondent. See Gustafson's Dairy, Inc. v. Commissioner, T.C. Memo. 1995-11↩.