GUSTAFSON'S DAIRY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gustafson's Dairy v. Commissioner
Docket No. 24670-93
United States Tax Court
T.C. Memo 1995-11; 1995 Tax Ct. Memo LEXIS 11; 69 T.C.M. (CCH) 1639; January 11, 1995, Filed *11 For petitioner: James H. Sheehan and John S. Ball. For respondent: Michael A. Pesavento. PARKER
MEMORANDUM OPINION PARKER, Judge: This case is before the Court on petitioner's motion under Rule 142(e) to shift the burden of proof to respondent to the limited extent set forth in section 534(a)(2). [1]
In the notice of deficiency, dated August 26, 1993, respondent determined deficiencies and additions to tax as follows: Additions to Tax
Sec. 6653
Year Ended
Deficiencies
(a)(1)(A) Sec.6653(a)(1)(B)
Sec.6653(a)
March 31, 1987
$ 372,401
$ 18,620
50% of interest
due on $ 372,401
March 31, 1988
674,386
33,719
50% of interest
due on $ 674,386
March 31, 1989
246,286
--  --  $ 12,314
Respondent determined that petitioner is liable for the accumulated earnings *12 tax imposed by section 531 for the fiscal years ended March 31, 1987, March 31, 1988, and March 31, 1989. In an Amendment to Answer, respondent asserted that petitioner had accumulations in excess of business needs of $ 9,289,501 for fiscal year ended March 31, 1987, $ 9,583,002 for fiscal year ended March 31, 1988, and $ 10,001,121 for fiscal year ended March 31, 1989, pursuant to revised Bardahl calculations. [2] These revised calculations do not affect the amounts of the deficiencies or additions to tax asserted in the notice of deficiency and do not raise any new issues. Sections 531 and 532 impose an accumulated earnings tax on any corporation that is availed of for the purpose of avoiding income tax with respect to its shareholders by permitting earnings and profits to accumulate instead of being divided or distributed. The fact that earnings and profits are permitted to accumulate "beyond the reasonable *13 needs of the business" shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation proves to the contrary by a preponderance of the evidence. Sec. 533(a). Petitioner contends that its reasonably anticipated business needs exceeded its accumulated earnings and profits and that, therefore, it does not owe any accumulated earnings tax. The reasonableness of petitioner's claimed business needs will be the primary issue in any trial of the merits of this case. If those needs exceed accumulated taxable income (after adjustments under section 535(b)), petitioner will owe no tax; if they do not, petitioner nonetheless will be able to reduce its accumulated taxable income by the amount of any reasonable accumulations. Sec. 535(a), (c). Contrary to ordinary Tax Court practice under Rule 142(a), the burden of proving the allegation that all or any part of the earnings and profits of a corporation have been permitted to accumulate beyond the reasonable needs of the business shall be on respondent if the taxpayer has submitted a sufficient statement as described in section 534(c). Sec. 534(a)(2). The taxpayer must submit a statement *14 of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of its earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business. Sec. 534(c). In this case, prior to the issuance of the notice of deficiency, and in accordance with section 534(b), respondent issued a notification to petitioner that respondent intended to issue a notice of deficiency that would be premised, in whole or part, on the accumulated earnings tax. Petitioner submitted a timely statement under section 534(c) (the statement). Respondent issued a notice of deficiency in accumulated earnings tax, and petitioner filed a timely petition with this Court. The only disputed issue on this motion is the sufficiency of the statement submitted by petitioner. Either party may move under Rule 142(e) for the Tax Court to fix the burden of proof on the issue of the reasonableness of petitioner's accumulations. Petitioner has so moved, and respondent has filed a response to that motion. The Court finds it appropriate to decide the Rule 142(e) motion at this time prior to trial. Rutter v. Commissioner, 81 T.C. 937, 939 (1983); *15 Chatham Corp. v. Commissioner, 48 T.C. 145, 146 (1967); cf. Shaw-Walker Co. v. Commissioner, 39 T.C. 293 (1962). The regulations provide that the burden of proof is on respondent if the taxpayer has submitted a section 534(c) statement but only with respect to the relevant ground or grounds set forth in the statement and only if such ground or grounds are supported by facts contained in the statement sufficient to show the basis thereof. Sec. 1.534-2(a)(2), Income Tax Regs. The burden of proof remains on the taxpayer if the taxpayer has not submitted a section 534(c) statement or a statement has been submitted but the ground or grounds on which the taxpayer relies are not relevant to the allegation or, if relevant, the statement does not contain facts sufficient to show the basis of such grounds or grounds. Sec. 1.534-2(b), Income Tax Regs.
Professors Bittker and Eustice have commented that the statement: must constitute more than mere notice of an intent to prove the reasonableness of the accumulation. Rather, the taxpayer must show its hand by stating clearly and specifically the grounds on which it will rely *16 to prove reasonable business needs, and by setting out the facts (not the evidence, but more than conclusions of law) that, if proven, support the alleged business needs for the accumulation.
Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.08, at 8-28 (5th ed. 1987) (same passage from 4th ed. 1979 quoted in Hughes, Inc. v. Commissioner, 90 T.C. 1, 17 (1988), and Rutter v. Commissioner, 81 T.C. at 939). While the taxpayer's statement must reveal its litigation theory to respondent, the statement "must outline only the basic facts necessary to notify respondent of the bases of the grounds asserted." Soros Associates International, Inc. v. Commissioner, T.C. Memo. 1982-79. "The taxpayer corporation is not required to state facts sufficient to meet a burden of proof which it may never have." Id. The Court of Appeals for the 11th Circuit, to which any appeal in this case would lie, has not addressed the issue of the sufficiency of the contents of a section 534(c) statement. However, in Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), *17 that court adopted all of the decisions of the former Court of Appeals for the 5th Circuit rendered prior to the close of business on September 30, 1981, as binding precedent. Thus, we think that the analysis set forth in Motor Fuel Carriers, Inc. v. Commissioner, 559 F.2d 1348, 1352 (5th Cir. 1977), revg. T.C Memo. 1975-296, is applicable in this case: We think section 534's language indicates that the statement simply serves a notice function. Whether the "grounds" divulged in the statement subsequently prove convincing is irrelevant to this function. * * * But just as the statement is not supposed to be legally sufficient on the question of definiteness, neither is it supposed to be a substitute for testimony at trial. Here, MFC sufficiently "showed its hand." We hold that this is all that section 534 requires. [Citations omitted.]
In order for a taxpayer to sufficiently "show its hand", it must provide details, where appropriate, with respect to specific amounts needed to be expended for reasonable business needs "so that respondent is not required to guess as to what they may be." Hughes, Inc. v. Commissioner, 90 T.C. at 18-19. *18 We shall consider each ground in petitioner's statement separately. As a result, we may impose the burden of proof on respondent with respect to some grounds and on petitioner with respect to other grounds. Hughes, Inc. v. Commissioner, supra at 18; Soros Associates International, Inc. v. Commissioner, supra.Petitioner will have the burden of proof with respect to any grounds or amounts not mentioned in the statement. Sec. 1.534-2(a)(2), Income Tax Regs. In its petition to this Court, petitioner has asserted additional grounds as to which it agrees it has the burden of proof. If petitioner's statement with respect to a particular ground provides support for petitioner's assertion that some accumulation was reasonable but fails to provide sufficient facts to support the full amount of the accumulation, then we will impose the burden of proof on respondent only to the extent the supporting facts are sufficiently disclosed. Petitioner will have the burden of proof for amounts in excess of those supported in the statement. Rule 142(a); Soros Associates International, Inc. v. Commissioner, supra. *19 The grounds for petitioner's accumulations can be categorized by the two different methods used to explain the accumulations. For some grounds, petitioner has provided its management's best estimate of reasonably anticipated expenditures. If the facts disclosed in the statement are sufficiently substantial, material, definite, and clear to permit respondent to prepare for trial, we will deem the statement sufficient as to these grounds. Respondent may carry her burden of proof at trial by showing, e.g., that no estimate in fact was made as of the close of a particular fiscal year, or that the estimate was disproportionate to what was reasonably necessary for petitioner's business, or that petitioner's asserted need was too speculative to be reasonably anticipated. See Yates Petroleum Corp. v. Commissioner, T.C. Memo. 1992-146. On other grounds, petitioner's statement relies on the Bardahl formula to show the reasonableness of the accumulation. On such grounds, petitioner will have made a sufficient disclosure if it adequately states the formula relied upon for determining an anticipated need, sufficient data to use the formula, and the end *20 result of the formula. Respondent may meet her burden of proof at trial if she shows by a preponderance of the evidence, e.g., that the formula itself is unreasonable, or that the data are inaccurate or unrealistic. For the purposes of ruling on petitioner's Rule 142(e) motion, we will accept the facts asserted in petitioner's statement as if they are true. Soros Associates International, Inc. v. Commissioner, supra. We do so to facilitate analysis: we are not making findings of fact at this time. Chatham Corp. v. Commissioner, 48 T.C. at 147. Petitioner Gustafson's Dairy, Inc. (petitioner), has its principal place of business in Green Cove Springs, Florida. Petitioner is engaged primarily in dairy milk processing, packaging, and distribution. Petitioner can trace its origin to 1908 when Agnes and Frank Gustafson purchased a single cow to provide milk for their six children. Excess milk was given to neighbors. Increasing requests for milk led the Gustafsons to purchase another cow and begin selling milk on a daily basis. Additional land and cows were steadily acquired, and the business continued to grow. *21 Petitioner was incorporated in 1954. Petitioner's stock is wholly owned by members of the Gustafson family or by trusts in which members of the family are beneficiaries. Petitioner presently employs over 350 employees, owns over 9,500 acres of land and in excess of 5,300 cows, and has annual sales in excess of $ 50 million. Unlike most dairy operations, petitioner is engaged in the full cycle of milk production. It grows most of the corn and other crops used to feed the cows, milks the cows, processes and packages the milk, and delivers the milk to numerous retail outlets, using its own fleet of trucks. Petitioner has one of the largest, if not the largest, dairy herds maintained at a single location in the United States. Petitioner also purchases milk from other dairies in the area for processing, packaging, and distribution. The milk processed and packaged at petitioner's facilities is marketed under both the "Gustafson's Dairy" label and the "Superbrand" label when distributed to the Winn-Dixie grocery chain and under the "Gustafson's Dairy" label when distributed to other retail outlets. Over its years of operation, petitioner has expanded and increased its market share, *22 has maintained its relationship with Winn-Dixie, and has positioned itself for continuing future growth and expansion. Petitioner's management attributes this success to its fiscally responsible policies. Cash reserves are maintained to meet any emergencies that may arise. Petitioner continues to follow the philosophy of the founding Gustafsons that it will finance expansion, capital improvements, and operating needs from its earnings and profits. Petitioner's policy is to avoid long term debt to the fullest extent possible. Management credits such policies for the corporation's ability to expand and prosper while other dairies have become bankrupt or have been forced to merge with other companies. E.S. Gustafson, Sr. (Gustafson), along with his son, E.S. Gustafson, Jr., and his grandson, E.S. Gustafson III, currently manage petitioner. On March 31, 1988, Gustafson established the Gustafson's Dairy Farm Supertrust (the Supertrust) for the specific purpose of planning for and implementing plans for solutions to the long term needs of petitioner. Gustafson was the initial grantor of the Supertrust and serves as individual trustee. First UnionNational Bank of Florida is the *23 corporate trustee. At the time of the creation of the Supertrust, management had significant concern that, although petitioner had been planning for short term needs of up to 5 years, it needed to focus on long term needs as well. Thus, management decided to take steps to prepare petitioner to meet future challenges. The Supertrust provides that the "major irrevocable purpose of the Trust will be to anticipate, provide for and implement solutions for the long term needs of the Dairy." Petitioner and members of the Gustafson family have made contributions to the Supertrust that are held in separate funds for each individual or entity contributor. As a contributor, petitioner receives the net income from its fund but is not entitled to a return of its principal contribution, in whole or in part, except upon termination of the Supertrust. Petitioner, thus, argues that the funds contributed to the Supertrust should not be considered liquid assets that have been unreasonably accumulated. We have previously held that "The critical factor in determining whether a corporation has accumulated its earnings and profits beyond the reasonable needs of its business is not the monetary size *24 of the accumulated earnings and profits but the corporation's liquid position and the relation of that position to current and anticipated needs." Hughes, Inc. v. Commissioner, 90 T.C. at 19-20, (citing Faber Cement Block Co. v. Commissioner, 50 T.C. 317, 329 (1968)). However, this argument is a substantive one for trial and need not be addressed at this time. Petitioner's statement asserts that it has not permitted its earnings and profits to accumulate beyond the reasonable needs of its business. Petitioner argues that, in fact, its accumulated earnings and profits are inadequate to meet its future challenges. We address individually each of the seven grounds asserted by petitioner as reasonable business needs. 1. WORKING CAPITAL NEEDS/SUPERTRUST Petitioner claims that it reasonably accumulated $ 3 million in fiscal year 1987, $ 3.2 million in fiscal year 1988, and $ 3.6 million in fiscal year 1989 for the working capital needs of the business. Respondent has made no concession on this ground. Petitioner calculated the working capital needs of its business for the fiscal years ended 1987 ($ 3,185,178) and 1988 *25 ($ 3,551,913), or possibly 1988 and 1989, respectively, [3] using the average business cycle method developed in Bardahl Manufacturing Corp. v. Commissioner, T.C. Memo. 1965-200 (the Bardahl formula). No calculations have been provided for fiscal year 1989 (or fiscal year 1987) depending on whether one looks at the statement or at the petition in this case. See supra note 3. Respondent asserts that petitioner's calculations contain mathematical mistakes as well as gross mistakes in the numbers used in the computations. We agree. Petitioner has stated a formula, furnished some of the data to use the formula, and calculated an end result of the formula probably for fiscal years ended 1988 and 1989. See supra note 3. In view of the errors, ambiguity as to which years *26 the calculations cover, and the fact that no calculation was furnished for one of the years, the burden of proof on this ground will not be shifted to respondent for any of the years. 2. SELF INSURANCE (GENERAL AND PRODUCT LIABILITY) Petitioner claims it was reasonable to accumulate $ 5 million to cover its exposure for excess general and vehicle liability and for potential losses attributable to product liability. Respondent has made no concession on this ground. Petitioner operates over 200 trucks and vehicles, servicing some 2,500 outlets with milk. In addition, petitioner not only farms and produces milk but also bottles, packages, and distributes it. All of the milk is processed through a central processing and bottling facility. There are a number of points throughout the process at which deliberate or inadvertent contamination can occur. During 1985, petitioner did not renew its commercial liability policy with Western Employers, Inc. Petitioner reduced its umbrella coverage from $ 10 million to $ 5 million, becoming self-insured for the excess exposure. The underlying insurance provides coverage of $ 1 million per occurrence for vehicle liability and product liability. *27 The statement discloses insufficient facts to place the burden of proof on respondent on this ground. Petitioner has not set forth in detail why management chose not to renew its commercial liability policy. In addition, petitioner's discussion of its potential liability exposure is vague and speculative. Petitioner has not presented any information on its past loss experience or the loss experience of comparable companies to justify the $ 5 million accumulation for self-insurance. Therefore, the burden of proof with respect to this ground remains with petitioner. 3. REPLACEMENT OF HERD Petitioner asserts that it was reasonable to accumulate $ 3.3 million in fiscal year 1987, $ 3.9 million in fiscal 1988, and $ 3.9 million in fiscal 1989 for the replacement of the cow herd in the event of loss due to disease, hurricane, or other natural disaster. Respondent has made no concession on this ground. Petitioner does not carry any insurance to cover the costs of replacing the herd in the event of losses. Petitioner's management saw the need to establish a reserve for herd replacement. Management estimated replacement costs (net of estimated amounts likely to be received for *28 slaughter of the cows) and recorded these amounts in analyzing its capital needs during the year-end meetings. Again, petitioner has presented only an anecdotal and speculative discussion of potential losses of cows or the entire herd. Petitioner has failed to provide facts as to its cow loss experience or the loss experience of comparable companies. Therefore, petitioner bears the burden of proof with respect to this ground. 4. REPLENISH/INCREASE HERD - POLLUTION CONTROL Petitioner asserts that $ 1,425,000 in fiscal year 1987, $ 1,575,000 in fiscal year 1988, and $ 1,575,000 in fiscal year 1989 were reasonably accumulated to replenish and increase the herd. Respondent has made no concession on this ground. During the years at issue, petitioner had approximately 6,000 cows. Management felt that it would be necessary to replenish the herd, as cows died and were sold, and to increase the herd over a 2-to 3-year period by 1,500 cows, for a total of 7,500 cows. In addition, during fiscal years 1988 and 1989, management further projected that another 1,500 cows (for a total of 9,000 cows) would be needed over a period of 3 to 5 years, with a corresponding need of additional funds *29 of $ 1,575,000. Management calculated that the replacement cost of 3,000 additional cows would be $ 1,950,000 (3,000 cows at $ 650 each, net of recovery from slaughter). Management also calculated that new facilities for the extra cows would cost at least $ 1,195,000. Management documented the need for these funds at its year-end meetings and intended to proceed with these projected expenditures. However, management was forced to postpone its plans to expand. For many years, petitioner had been struggling with waste removal problems caused by its already large herd. At fiscal year end March 31, 1988, management had projected a need to spend $ 50,000 to add a lagoon (holding pond) to its pollution control system and had further projected the need to spend $ 500,000 by fiscal year end March 31, 1991, on the pollution control system overall. In October of 1988, a discharge of effluent occurred when the dike of an 8-acre holding pond broke. Government officials inspected the site, and management projected that further significant expenditures would need to be made to upgrade its pollution control system and to comply with the rules of Florida's Department of Environmental Regulation. *30 We have previously held that "The regulations under section 537 provide that the reasonable needs of the business include reasonably anticipated needs of the business." Rutter v. Commissioner, 81 T.C. at 943; Technalysis Corp. v. Commissioner, 101 T.C. 397, 409 (1993). However, the regulations provide that, in order to justify an accumulation of earnings and profits, "the corporation must have specific, definite, and feasible plans for the use of such accumulation." Sec. 1.537-1(b)(1), Income Tax Regs. Furthermore: Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably *31 anticipated needs of the business. [Id.]
Petitioner has presented sufficient information to show the basis for the planned replenishment and increase of the herd in support of its claim of a need for earnings accumulation for fiscal years 1987 and 1988. See Motor Fuel Carriers, Inc. v. Commissioner, 559 F.2d at 1351-1352. Thus, we shift the burden of proof to respondent as to this issue for those years. However, after the breaking of the dike in October of 1988, management knew that expansion of the herd had to be postponed indefinitely. Thus, further accumulations for that purpose cannot be justified. Nevertheless, petitioner has shown the reasonableness of the fiscal year ended March 31, 1989, accumulation to the extent of $ 550,000 for pollution controls. The burden of proof shifts to respondent to that extent for fiscal year ended 1989 and remains with petitioner for the remaining amount of accumulations for that year. 5. CAPITAL IMPROVEMENTS Petitioner asserts that $ 2 million in fiscal year 1987, $ 1,255,000 in fiscal year 1988, and $ 2.4 million in fiscal year 1989 were reasonably accumulated for the acquisition of additional *32 vehicles and equipment and for the purpose of making capital improvements and expenditures. Respondent has made no concession on this ground. Petitioner's board of directors projected capital needs for periods ending 2 years and 4 years after the end of each of the fiscal years at issue. These rather confusing and vague projections were as follows: Fiscal Year Ended March 31, 1987
(Updated November 12, 1987)
Projected capital needs by March 31, 1990
Equipment
$   121,000
Paving/Land/Road
1,450,000
$ 1,571,000
Fiscal Year Ended March 31, 1988
Projected capital needs by March 31, 1991
Equipment/Roof
$ 1,050,000
Paving/Land/Road
1,900,000
$ 2,950,000
Projected capital needs by March 31, 1993
Land
$ 2,000,000
Fiscal Year Ended March 31, 1989
Projected capital needs by March 31, 1992
Equipment
$ 3,600,000
Paving/Land/Road
2,400,000
$ 6,000,000
On December 31, 1990, petitioner acquired approximately 1,799.7 acres of additional land from Union Camp Corporation for a purchase price of $ 2,249,625. The land was purchased for cash, a condition of the seller's offer. The acquisition expanded the farm to a total of approximately 9,500 *33 acres. Petitioner states that it made other extensive purchases and capital improvements during the years at issue and thereafter in an ongoing effort to modernize its facilities and remain competitive. However, petitioner wholly failed to disclose what those other purchases and capital improvements were or the amounts for such purchases or improvements. The fact that petitioner actually made a purchase of land lends credibility to petitioner's claim that some funds were reasonably accumulated. Thus, with respect to that land transaction, petitioner has disclosed sufficient facts to place the burden of proof on respondent. [4] However, with respect to any other purchases and capital improvements, the burden of proof remains on petitioner. *34 6. DEPENDENCE ON WINN-DIXIE AND COMPETITION Petitioner states that it is impossible to predict the amount of funds petitioner would need to have on hand if it were required to reorient its business from the loss of the Winn-Dixie account. Petitioner asserts that it is essential that it maintain a strong financial base, not only in its dealings with Winn-Dixie but also to meet price competition and challenges from its larger competitors. Respondent has made no concession on this ground. The statement discloses insufficient facts to place the burden of proof on respondent on this ground. Petitioner merely provides a narrative of its relationship with Winn-Dixie and the potentially volatile nature of that relationship. Petitioner does not present any attempts by management to quantify the impact of a loss of Winn-Dixie as a customer. There is no factual basis in the statement for the claim that any funds have been reasonably accumulated on this ground. Therefore, the burden of proof remains on petitioner with respect to this ground. 7. HERD RELOCATION AND LAND DEVELOPMENT Petitioner's operations are currently situated adjacent to the city limits of Green Cove Springs in *35 Clay County, Florida. Petitioner's board of directors determined that, due to future environmental concerns, it will be necessary to move its operations to a less populated location within the next 10 to 20 years. Petitioner generally speaks of the forecasted influx of families into the county, anticipated complaints of noise and odor pollution, and the increasing environmental regulations and restrictions that it will face. Petitioner also discusses its management's decision to turn the acreage on which petitioner's operations currently are located into a planned community. Petitioner asserts that the cost of developing this project in compliance with the State of Florida's comprehensive growth management plan will be enormous and alone would justify all of the cash and cash equivalents that petitioner has accumulated to date. Petitioner has not provided sufficient supporting facts to warrant shifting the burden of proof to respondent on this ground. Petitioner has not provided any evidence regarding identification of a site for relocation, a projection of the amount of funds needed to purchase the new site, and any timetable within which the relocation would occur and construction *36 of the planned community would commence. Petitioner generally speaks of these "plans" as occurring within the next 10 to 20 years. Respondent lacks sufficient factual basis on this ground to prepare for trial; therefore, the burden of proof with respect to this ground will remain with petitioner. See sec. 1.537-1(b)(1), Income Tax Regs.
SUMMARY The parties have the burden of proof on the various grounds in the statement as follows: Respondent
Petitioner 1.
Working Capital Needs
X
2.
Self Insurance
X
3.
Replacement of Herd
X
4.
Replenish Herd/Pollution Control
all amounts for
amount above
1987 and 1988
$ 550,000 for
and to the extent
1989
of $ 550,000
for 1989
5.
Capital Improvements
to the extent
X
of land purchase
6.
Dependence on Winn-Dixie
X
7.
Relocation and Land Development
X
Based on the foregoing,
An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Bardahl Manufacturing Corp. v. Commissioner, T.C. Memo. 1965-200↩.
3. In the petition, petitioner states that the exhibits to the statement are mislabeled and that a separate calculation of the Bardahl↩ formula was not attached for the fiscal year ended March 31, 1987.
4. The projection of $ 2,000,000 for land appears to be a reasonable business need. Although not expressly stated by petitioner, we think it is implicit that the land was acquired for dairy use and not for some speculative land venture. However, that is a matter of proof to be submitted at the trial.↩