T.C. Memo. 1997-322

UNITED STATES TAX COURT

ZEEMAN MANUFACTURING COMPANY, INC. AND SUBSIDIARIES,
Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25078-95.                    Filed July 14, 1997.

<u>David D. Aughtry</u> and <u>Donald P. Lancaster</u>, for petitioner.

<u>Bonnie L. Cameron</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant case is before the Court on
respondent's motion pursuant to Rule 142(e) to shift the burden
of proof to petitioner to the limited extent set forth in section
534(a)(2).[1]

---

[1]     Unless otherwise indicated, all section and Code references
                                        (continued...)

In the notice of deficiency, respondent determined deficiencies in and penalties on petitioner's Federal income tax as follows:

| Taxable Year Ending June 30 | Deficiency | Accuracy-related Penalties Sec. 6662 |
|---|---|---|
| 1991 | $225,794 | $45,159 |
| 1992 | 318,517 | 63,703 |
| 1993 | 379,025 | 75,805 |

Petitioner has its principal place of business in Chamblee, Georgia.

Prior to the issuance of the notice of deficiency and in accordance with section 534(b), respondent issued to petitioner a Notice of Intent to Assert Accumulated Earnings Tax stating that respondent intended to issue a notice of deficiency for the tax on accumulated earnings pursuant to section 531. Petitioner submitted a timely statement pursuant to section 534(c). Subsequently, respondent issued a notice of deficiency in which respondent determined, inter alia, that petitioner is liable for the accumulated earnings tax pursuant to section 531 for petitioner's taxable years ended June 30, 1991, 1992, and 1993. Petitioner filed a petition with this Court, and respondent filed an answer. After the instant case was calendared for trial, respondent filed the instant motion to shift the burden of proof.

[1](...continued)
are to the Internal Revenue Code as in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Either party may, pursuant to Rule 142(e), move the Court to fix the burden of proof, pursuant to section 534, on the issue of the reasonableness of petitioner's accumulations. Respondent has so moved, and petitioner has filed a response to that motion. The Court concludes that it is appropriate to decide the instant motion prior to trial. Rutter v. Commissioner, 81 T.C. 937, 939 (1983); Chatham Corp. v. Commissioner, 48 T.C. 145, 146 (1967).

Sections 531 and 532 impose an accumulated earnings tax on any corporation that is availed of for the purpose of avoiding income tax with respect to its shareholders by permitting earnings and profits to accumulate beyond the reasonable needs of its business. Section 533(a) provides that, unless the corporation proves to the contrary by the preponderance of the evidence, the fact that earnings and profits are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders.

Petitioner contends that it does not owe any accumulated earnings tax because its reasonably anticipated business needs exceeded its accumulated earnings and profits. The primary issue in any trial of the merits of the instant case will be the reasonableness of petitioner's claimed business needs. If those needs exceed petitioner's accumulated taxable income (after adjustments pursuant to section 535(b)), petitioner will owe no accumulated earnings tax. Secs. 531, 535(a). If, however, those

needs do not exceed such taxable income, petitioner nonetheless will be able to reduce its accumulated taxable income by the amount of any reasonable accumulations. Sec. 535(a), (c).

If, pursuant to section 534(c), a taxpayer submits a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of its earnings and profits have not been permitted to accumulate beyond the reasonable needs of its business (section 534(c) statement or statement), respondent bears the burden of proving the grounds set forth in the statement. Sec. 534(a)(2). Respondent, however, bears the burden of proof in such a case

> only with respect to the relevant ground or grounds set forth in the statement submitted by the taxpayer, and only if such ground or grounds are supported by facts (contained in the statement) sufficient to show the basis therof [sic]. [Sec. 1.534-2(a)(2), Income Tax Regs.]

The burden of proof remains on the taxpayer, inter alia, if the taxpayer submits a statement "but the ground or grounds on which the taxpayer relies are not relevant to the allegation or, if relevant, the statement does not contain facts sufficient to show the basis thereof." Sec. 1.534-2(b)(2), Income Tax Regs.

Accordingly, the only issue we decide is the sufficiency of the statement submitted by petitioner.[2] In Bittker & Eustice,

---

[2] Petitioner contends that respondent bears the burden of proof as to the accumulated earnings issue in its entirety. In
(continued...)

Federal Income Taxation of Corporations and Shareholders, par.

7.08[2], at 7-31 (6th ed. 1994), the authors comment that a

section 534(c) statement:

> must constitute more than mere notice of an intent to
> prove the reasonableness of the accumulation.  Rather,
> the taxpayer must show its hand by stating clearly and
> specifically the grounds on which it will rely to
> quantify and prove reasonable business needs <u>and</u> by
> setting out the facts (not the evidence but more than
> conclusions of law) that, if proven, support the
> alleged business needs for the accumulation.
> [<u>Gustafson's Dairy, Inc. v. Commissioner</u>, T.C. Memo.
> 1995-11 (quoting substantially same passage in 5th ed.
> (1987)); <u>Hughes, Inc. v. Commissioner</u>, 90 T.C. 1, 17
> (1988) (substantially same language in 4th ed. (1979));
> <u>Rutter v. Commissioner</u>, <u>supra</u> at 939 (same).]

Although the taxpayer's statement must reveal its litigation

theory to respondent, the statement must outline only the basic

---

[2](...continued)
the notice of deficiency, respondent used the Bardahl calculation
that appeared in respondent's Notice of Intent to Assert
Accumulated Earnings Tax (Notice of Intent).  After the Notice of
Intent was sent but before the notice of deficiency was sent,
respondent's agent agreed to certain corrections to the Bardahl
calculation.  Accordingly, citing the <u>Helvering v. Taylor</u>, 293
U.S. 507, 515 (1935) line of cases, petitioner argues that the
notice of deficiency is excessive and erroneous and that,
therefore, respondent bears the burden of proof as to all matters
therein.

We disagree.  In the instant case, for purposes of the
notice of deficiency, respondent used a Bardahl computation in
the determination of petitioner's tax liability.  Generally, we
do not look behind a notice of deficiency to examine the evidence
used or the propriety of the Commissioner's motives,
administrative policies, or procedures involved in making the
determinations in the notice.  <u>Proesel v. Commissioner</u>, 73 T.C.
600, 605 (1979); <u>Greenberg's Express, Inc. v. Commissioner</u>, 62
T.C. 324, 327 (1974).  Accordingly, except to the limited extent
we decide otherwise herein, the burden of proof remains on
petitioner to prove that respondent's determinations are
erroneous.  Rule 142(a).

facts necessary to notify respondent of the bases of the grounds asserted.  Soros Associates Intl., Inc. v. Commissioner, T.C. Memo. 1982-79.  The taxpayer is not required to state facts sufficient to meet a burden of proof which it may never have. Id.

The Court of Appeals for the Fifth Circuit[3] has stated:

> We think §534's language indicates that the statement simply serves a notice function.  Whether the "grounds" divulged in the statement subsequently prove convincing is irrelevant to this function.  * * *  But just as the statement is not supposed to be legally sufficient on the question of definiteness, neither is it supposed to be a substitute for testimony at trial.  [Motor Fuel Carriers, Inc. v. Commissioner, 559 F.2d 1348, 1352 (5th Cir. 1977), revg. T.C. Memo. 1975-296; citations omitted.[4]]

To "show its hand" sufficiently, the taxpayer must provide details, where appropriate, with respect to specific amounts needed to be expended for reasonable business needs "so that

_____

[3]     In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit, the circuit to which any appeal of the instant case would lie, adopted as binding precedent all of the decisions of the Court of Appeals for the Fifth Circuit rendered prior to the close of business on Sept. 30, 1981.

[4]     Respondent argues that petitioner relies on Motor Fuel Carriers, Inc. v. Commissioner, 559 F.2d 1348 (5th Cir. 1977), revg. T.C. Memo. 1975-296, as holding that the Court of Appeals for the Fifth Circuit requires a lower standard than other courts in deciding the sufficiency of sec. 534(c) statements.  We disagree.  Petitioner, contrary to respondent's assertion, cites Motor Fuel Carriers, Inc. for the proposition that, for purposes of shifting the burden of proof pursuant to sec. 534, a sec. 534(c) statement is subject to a lower standard than the substantive inquiry at trial pursuant to sec. 533(a). Accordingly, we conclude that respondent's argument is without merit.

respondent is not required to guess as to what they may be." Hughes, Inc. v. Commissioner, 90 T.C. at 18-19.

If petitioner's statement with respect to a particular ground provides sufficient facts to support an assertion that some accumulation was reasonable but fails to provide sufficient facts to support the full amount of the accumulation, then we will impose the burden of proof on respondent only to the extent the supporting facts are sufficiently disclosed. Petitioner bears the burden of proof for amounts in excess of those supported in the statement. Rule 142(a); Soros Associates Intl., Inc. v. Commissioner, supra. Additionally, petitioner bears the burden of proof with respect to any grounds or amounts not mentioned in the statement. Sec. 1.534-2(a)(2), Income Tax Regs.

For purposes of the accumulated earnings tax, the term "reasonable needs of the business" includes the "reasonably anticipated needs of the business". Sec. 537; Technalysis Corp. v. Commissioner, 101 T.C. 397, 409 (1993). If the facts disclosed in the statement are sufficiently substantial, material, definite, and clear to permit respondent to prepare for trial, the statement will be deemed sufficient as to such grounds. J.H. Rutter Rex Manufacturing Co. v. Commissioner, 853 F.2d 1275, 1283 (5th Cir. 1988), affg. in part, revg. in part and remanding T.C. Memo. 1987-296; see also Thompson Engg. Co. v. Commissioner, 80 T.C. 672, 693 (1983), revd. on another issue 751 F.2d 191 (6th Cir. 1985).

To justify an accumulation of earnings and profits, a taxpayer must (1) indicate that the future needs of the business require such accumulation, and (2) have specific, definite, and feasible plans for the use of such accumulation. Sec. 1.537-1(b)(1), Income Tax Regs. An accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Id. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business. Id. At trial, respondent may carry the burden of proof by establishing, e.g., that no estimate in fact was made as of the close of a particular fiscal year, or that the estimate was disproportionate to what was reasonably necessary for petitioner's business, or that petitioner's asserted need was too speculative to be reasonably anticipated. See Yates Petroleum Corp. v. Commissioner, T.C. Memo. 1992-146.

For purposes of ruling on the instant motion and to facilitate our analysis, we accept the grounds and facts asserted in petitioner's statement as if they are true; however, in deciding the instant motion, we are not called upon to make

findings of fact in the instant case. <u>Chatham Corp. v. Commissioner</u>, 48 T.C. at 147; <u>Soros Associates Intl., Inc. v. Commissioner</u>, <u>supra</u>.

Petitioner is engaged primarily in clothing manufacturing and retailing.

During 1932, the predecessor Zeeman clothing company was founded by Harold Zeeman, Sr., in Allentown, Pennsylvania, as a manufacturer and wholesaler of men's clothing. At that time, the manufacturing facilities consisted of only a cutting room on the fourth floor of a building. This cut work was sent to contractors in Philadelphia, Pennsylvania, for assembly and thereafter sold in retail stores. When retailers could not pay their bills, Harold Zeeman, Sr., and his brothers Edward and Jessie began selling directly to the public from their cutting room. As the business thrived, the company opened a retail store on the ground floor. Subsequently, similar factory stores were opened in Harrisburg, Pennsylvania, and Richmond, Virginia. During the 1940's, wholesale stores were opened in California.

After 1949, Harold Zeeman, Sr., and his son, Harold Zeeman, Jr., (Mr. Zeeman) started a wholesale sport coat business. A sales force was hired, a sales office was opened in New York City, and a substantial business was developed. During 1964, when labor problems arose in Allentown, Mr. Zeeman moved petitioner's entire manufacturing operation to Gainesville, Georgia. A retail store was soon opened at the factory site.

During 1965, a 14,000-square foot building was erected in Chamblee, Georgia, which eventually housed the company's headquarters, the central warehouse, and a new retail store.

During 1969, a new store was opened in New Orleans, Louisiana. During 1970, stores were opened in Memphis and Nashville, Tennessee. During 1973, stores were opened in Denver, Colorado, St. Louis, Missouri, and San Antonio, Houston, and Dallas, Texas.

During 1974, the wholesale business was discontinued, and the emphasis was shifted to retail store expansion with the opening of additional stores through the mid-1980's in New Mexico, Texas, North Carolina, Louisiana, Oklahoma, and Georgia. Currently, petitioner has stores in 31 locations throughout the United States.

During 1986 and 1987, plans were made to move the Gainesville manufacturing plant offshore. During 1987, a site was chosen in Alajuela, Costa Rica. Assembly work in the Gainesville facility was discontinued during 1987, with only cutting and raw material inventory being kept there. Production of suits, sport coats, and slacks began in Costa Rica during 1988, and it steadily increased to the current level of over 10,000 suits per month.

Over its years of operation, petitioner has shown impressive growth and success, which petitioner's management attributes to conservative financial policies, forbearance from debt so that

petitioner may avoid interest and grow from within, solid banking and supplier relationships, and controlled expansion and improvement in a risky business. Petitioner does not borrow money and has not done so since 1965. Petitioner's policy is to finance current and future needs from within.

In its statement, petitioner asserts that it has not permitted its earnings and profits to accumulate beyond the reasonable needs of its business. Petitioner argues, to the contrary, that its accumulated earnings and profits are inadequate to meet its future business requirements. Petitioner states that it reasonably accumulated $23,002,264 in taxable year 1991, $23,257,978 in taxable year 1992, and $24,218,583 in taxable year 1993. We address individually each of the ten grounds asserted by petitioner as reasonable business needs. Respondent has made no concessions as to any grounds.

1.    Working Capital Needs

In its statement, petitioner sets forth working capital needs of its business as a ground that it reasonably accumulated $7,418,264 in taxable year 1991, $7,673,978 in taxable year 1992, and $8,634,583 in taxable year 1993. Petitioner calculated such needs using the average business cycle method developed in Bardahl Manufacturing Corp. v. Commissioner, T.C. Memo. 1965-200 (the Bardahl formula).

Respondent argues that petitioner used an unconventional method of computing the Bardahl formula and that petitioner's

computation contains mathematical errors.  Respondent also contends that petitioner did not provide the source of the financial information included in the Bardahl computation. Alternatively, respondent argues that, as certain amounts in petitioner's Bardahl computation do not correspond with the numbers in the Dun & Bradstreet credit compilation attached to the section 534(c) statement, petitioner's "conflicting" information does not provide "specific amounts" needed to be expended for business needs.

In Gustafson's Dairy, Inc. v. Commissioner, T.C. Memo. 1995-11, we stated that a taxpayer will have made a sufficient disclosure of its Bardahl computation if the taxpayer adequately states the formula relied upon for determining an anticipated need, sufficient data to use the formula, and the end result of the formula.  In its section 534(c) statement, petitioner has stated a formula, furnished the data to use the formula,[5] and calculated an end result of the formula for its taxable years ended 1991 through 1993.[6]  For the Bardahl computation for each taxable year, petitioner provided, inter alia, the cost of goods

---

[5]     We note that, since the filing of the instant motion and the supporting memoranda of law thereunder, the parties have agreed to certain changes in the Bardahl computation.  We, however, address only the sec. 534(c) statement and the Bardahl computation included therein.  Sec. 534(a)(2); sec. 1.534-2(a)(2), Income Tax Regs.

[6]     Respondent cites no specific mathematical errors, and we find no such errors in petitioner's Bardahl computation.

sold (including the calculations therefor), inventories, inventory turnover, sales, accounts receivable, accounts receivable turnover, merchandise purchased, accounts payable, accounts payable turnover, and days in adjusted operating cycle. Accordingly, we conclude that petitioner has made a sufficient disclosure as to the accumulation for working capital needs based upon the Bardahl formula.

We believe that respondent's arguments concerning petitioner's particular Bardahl formula and computation, the source of petitioner's financial information in its Bardahl computation, and the discrepancies between petitioner's Bardahl computation and the Dun & Bradstreet credit compilation are arguments to be interposed at trial and need not be addressed in deciding the instant motion. Accordingly, we hold that, for purposes of section 534(c), petitioner has made a sufficient disclosure of the formula and data it relies upon to show its working capital needs. Gustafson's Dairy, Inc. v. Commissioner, supra. Consequently, we hold that respondent bears the burden of proof as to the working capital needs of petitioner's business to the extent of $7,418,264 for taxable year 1991, $7,673,978 for taxable year 1992, and $8,634,583 for taxable year 1993. We note that respondent may carry the burden of proof at trial by establishing, e.g., that the formula itself is unreasonable or the data are inaccurate or unrealistic. Id.

2.    Expansion of Costa Rican Manufacturing Facility

Petitioner's next ground set forth in its statement is that it needed to accumulate $1,800,000 during each of the taxable years in issue for building a second manufacturing facility in Costa Rica.  During 1988, petitioner constructed a 20,000-square foot factory building in Costa Rica.  The total cost of purchasing, building, outfitting, and installing fixtures in the facility and of training the workforce exceeded $1 million.

Production in Costa Rica proved quite profitable because the labor and operating costs were lower than in Gainesville, Georgia.  Accordingly, during 1990 and 1991, petitioner embarked upon a long-range plan to expand production in Costa Rica. Additionally, petitioner determined that it required extra manufacturing space to meet its current needs.

On January 13, 1992, the petitioner's board of directors met and memorialized its plan to build a second manufacturing facility in Puntarenas, Costa Rica.  At the meeting, the board adopted the following resolution:

> That the board give serious consideration to the
> investment in a second manufacturing facility in Costa
> Rica in the newly established Free Zone Industrial Park
> in the city of Puntarenas, Costa Rica.  The government
> of Costa Rica announced substantial labor subsidies to
> companies that open plants in Puntarenas where much
> unemployment exists.  Our company requires extra
> manufacturing space to fill the needs of our current
> and future stores.
>      Although it would require a large outlay of money
> to build, equip, and provide goods in process in the

new plant, it was agreed by the board that the return
in the future would be worth this investment.
It was agreed by the board that surplus company
funds should be earmarked for the above project.

In its section 534(c) statement, petitioner states that "the

Board decided to earmark all surplus for this expansion" but that

management estimated the cost of building and bringing on line

the second facility as well in excess of $1,800,000, based upon

the cost of the first facility.  Petitioner provides the

following breakdown of costs for building and outfitting the

second facility:

| | |
|---|---|
| Building | $300,000 |
| Machinery | 580,000 |
| Land | 100,000 |
| Initial inventory | 600,000 |
| Hiring and training work force | 220,000 |
| TOTAL | 1,800,000 |

Respondent argues that the minutes of the board of directors

meeting on January 13, 1992, do not establish an intent by

petitioner to begin construction of a new manufacturing facility.

Additionally, respondent argues that petitioner does not mention

any actual expansion that has been implemented, or,

alternatively, that petitioner's proposed or pending construction

expansion plans are not set forth and that petitioner offers no

explanation for the delay in completion.  Respondent contends

that the square footage of extra manufacturing space is not

stated and that petitioner neglects to name any real estate

agents, government officials, or architectural firms that it has

contacted.

We hold that petitioner has set forth sufficient details in its statement to show the basis of its grounds for accumulating earnings in the amount of $1,800,000 to build a second facility. Petitioner's grounds support the alleged business needs for the accumulation and provide a sufficient basis for respondent to prepare for trial. We conclude that respondent's arguments concerning the details of constructing a second facility should be interposed at trial and need not be addressed in deciding the instant motion. Accordingly, we conclude that, as to the second ground presented by petitioner, the burden of proof is on respondent.

3. Retail Expansion To Accommodate Production Expansion

Petitioner's next ground is that it reasonably accumulated earnings of $1 million for each of the taxable years in issue for the retail expansion required to accommodate the increased production from the first facility and the planned, second Costa Rican manufacturing facility. Petitioner states that, consistent with its usual practice, petitioner decided to finance the expansion through its surplus earnings instead of borrowed funds and points to its corporate minutes dated August 13, 1992, where the directors resolved "That every effort be made to search for and locate new sites to build free standing stores to utilize the increased production of the factory in Costa Rica." Petitioner states that it immediately began to locate sites to accommodate

the increased production and that it is in continuous contact with real estate agents with potential store locations.

On May 15, 1993, the directors met to discuss long-term domestic expansion plans. The minutes of that board meeting provide in relevant part:

> The Chairman suggested that because of increased production of suits, sport coats, and slacks from the Company plant in Costa Rica we should establish a long range plan to open three or four new retail outlets per year and to close any unprofitable retail outlets over the years.

> Bruce Zeeman estimated that it would take approximately $500,000 per store to build, sign, fixturize and inventory each new store if they are Company owned buildings. If new stores open in leased buildings, the estimated cost would be $150,000 to fixturize, sign, and inventory each store plus about $36,000 rent, taxes, and insurance.

> In order to fund the above expansion plans, it was decided that all Board Members should plan to use about $1,000,000 of earned surplus per year if and when feasible locations can be located. We will actively work with real estate reps in new markets as well as markets we are currently in.

> Mr. Jody Marchman and Harold and Barry Zeeman will make several trips per year to locate sites for these stores.

Petitioner states that, recently, stores have opened in Columbia, South Carolina, Charlotte, North Carolina, Austin, Texas, and Nashville, Tennessee.

Respondent argues that the resolution from the August 13, 1992, board of directors meeting is vague, general, and indefinite. Respondent argues that the resolution does not state

where the stores will be located, does not provide a timeframe in which to act, and does not set forth financial data.

Similarly, respondent argues that the minutes from the May 13, 1993, board of directors meeting are not specific and do not provide concrete and definite plans for the accumulation. Respondent argues that petitioner provided no evidence that a plan was ever finalized, no details on the long-range plan, no schedule for openings and closings of stores, no specific cities to target, no criteria used to determine that a particular retail outlet was unprofitable, and no facts regarding the number of stores to be closed. Respondent argues that petitioner did not provide the names of real estate representatives or firms that it allegedly met. As to the 4 stores opened recently by petitioner, respondent argues that petitioner sets forth neither the costs of opening those new stores nor the dates that the stores opened. Respondent argues that petitioner has provided no evidence regarding identification of sites for new stores, no projection of the amount of funds needed to acquire new stores, and no timetable for expansion into new stores.

We hold that petitioner has not disclosed in its statement facts that are sufficiently substantial, material, definite, and clear to permit respondent to prepare for trial. Petitioner provided insufficient basis for its assertion of its expansion plans for the opening of new stores and insufficient basis for its assertion that, during each of the years in issue, its

management decided to accumulate $1 million for that purpose. Accordingly, we hold that the burden of proof remains with petitioner as to the third ground.

4. Signage Project

Petitioner states that, during each of its 1992 and 1993 taxable years, it reasonably accumulated $484,000 to cover the anticipated costs of replacing the signs for stores of its wholly owned subsidiary Barry Manufacturing Company. Petitioner states that, during 1993, Barry Zeeman instituted a new corporate logo requiring new signs to be erected on its 38 different stores. Petitioner states that it committed to fund the new signage project and received quotes from various sign companies totaling approximately $484,000 to complete the project and that its earnings were earmarked for the cost of the new signs.

Respondent argues that petitioner's statement does not furnish detailed, clear, and specific information about the signage project. Respondent argues that petitioner failed to include the names of the various sign companies contacted and any quotes or bids from the companies. Additionally, respondent argues that petitioner did not include facts regarding when the project was to be completed or an explanation why there was a delay in completion. Finally, respondent argues that petitioner's signage project includes 38 stores, which contradicts petitioner's list of 31 stores elsewhere in the statement.

We hold that petitioner set forth in its statement a sufficient basis for accumulating earnings in the amount of $484,000 for its anticipated signage project for its 1992 and 1993 taxable years.  Petitioner has provided sufficient details to allow respondent to prepare for trial on this ground.  We conclude that respondent's arguments concerning petitioner's anticipated signage project should be interposed at trial and need not be addressed in deciding the instant motion. Accordingly, we hold that respondent has the burden of proof as to the fourth ground to the extent of $484,000 for petitioner's 1992 and 1993 taxable years.

5.    <u>Maintenance of Favorable Banking Relations</u>

Petitioner states that it reasonably accumulated $1 million during each of the years in issue to maintain a stated balance in its operating account.  Petitioner states that it maintained the minimum balance so that service and transaction charges would be waived, which petitioner estimates were on the order of $36,000. In its statement, petitioner included a letter from Trust Company Bank of Atlanta, dated April 26, 1995, which states that "the average collected balance required to be maintained in the above referenced operating account to cover various analysis (service) charges was $1,000,000."  Petitioner states that, during the years in issue, the average required balance fluctuated between $1,000,000 and $1,600,000.

Respondent argues that petitioner's exhibit does not support its contention as to its taxable years 1991 through 1993. Additionally, respondent argues that petitioner provides conflicting facts; viz, petitioner's Dun & Bradstreet report: (1) States that, as of September 9, 1992, petitioner's bank was NationsBank of Georgia, NA, but that, as of October 9, 1993, petitioner's bank was Trust Company of Georgia, and (2) lists petitioner's account averages as "moderate 5 figures."

We agree with respondent and hold that petitioner has not disclosed in its statement a sufficient basis to justify its accumulation for the purpose of maintaining favorable banking relations. Accordingly, we hold that the burden of proof remains with petitioner as to the fifth ground.

6. Maintenance of Favorable Supplier Relationships

Petitioner states that it reasonably accumulated $10 million during each of the years in issue to maintain a 4-A credit rating with Dun & Bradstreet. Petitioner states that, during the years in issue, petitioner's management "made a determination to continuously strive for a 4-A credit rating" from Dun & Bradstreet, which requires a net worth of at least $10 million. Additionally, petitioner states that the accumulation of capital has enabled petitioner to maintain a 4-A credit rating for the past several years, which it views as a distinct advantage in an industry known for slow paying manufacturers and retailers.

Petitioner states that, because of its credit rating, it receives numerous merchandise and fabric offers on favorable credit terms. Petitioner also states that it saves several hundred thousand dollars as a result of discounts on its purchases. Petitioner names several suppliers that have given petitioner favorable credit terms because of petitioner's credit rating. Petitioner states that, because of its credit rating, it is approached by suppliers several times per month with excess merchandise at reduced prices. Additionally, petitioner states that real estate agents contact petitioner with business opportunities and cites an instance when, during 1993, petitioner was contacted by the owner of some real estate.

Respondent argues that the specifics concerning the "favorable relationships" are not set forth. Respondent argues that petitioner did not indicate a monetary amount that was saved because of its credit rating. Respondent also argues that petitioner did not present any attempts by management to quantify the impact of obtaining and maintaining a 4-A credit rating. Additionally, respondent argues that the Dun & Bradstreet report that was attached to petitioner's statement presents conflicting information.

We agree with respondent. Accordingly, we hold that petitioner has not disclosed in its statement sufficient details to justify petitioner's asserted management decision to accumulate $10 million during its taxable years in issue in order

to earn a 4-A credit rating.  The burden of proof therefore remains with petitioner as to the sixth ground.

7.    Technology

Petitioner states that, during each of its 1992 and 1993 taxable years, it reasonably accumulated $300,000 to purchase a new computer system.  Petitioner states that, during 1992, it adopted a plan to purchase a new system, which is conservatively estimated to cost $300,000.

Respondent contends that petitioner has not provided the names of companies that it met with to purchase a new system or any bids that it may have received.  Additionally, respondent argues that petitioner does not state the type of computer system that it needs or the terms of the plan it adopted during 1992.

We hold that petitioner has not disclosed in its statement sufficient details to permit respondent to prepare for trial. Petitioner provided the cost of the computer system that was implemented during 1991 through 1993 (which became obsolete) but did not indicate any specific plans for the purchase of a new computer system.  Moreover, petitioner did not provide any details showing that petitioner's management decided during its 1992 and 1993 taxable years to accumulate $300,000 for that purpose.  Accordingly, we hold that the burden of proof remains with petitioner as to the seventh ground.

8.  Store Failure

Petitioner states that it reasonably accumulated $200,000 during each of the years in issue to cover the losses and relocation expenses relating to store closings.  Petitioner states that $200,000 allows for 2 store closings per year.  Petitioner states that the turnover of its stores is somewhat high and that, because of demographic changes, it was forced to close stores in, and to relocate from, Salt Lake City, Utah, Phoenix, Arizona, and Arlington, Texas.

Respondent argues that petitioner's statement is deficient because it does not explain how the $200,000 reserve amount was calculated and fails to provide the dates that the stores were closed and/or relocated.  Respondent also argues that petitioner fails to provide the decrease in the affected stores' sales and the losses sustained by each store because of its closing or relocation.  Additionally, respondent argues that petitioner does not identify the demographic changes that lead to store closings.

We hold that petitioner has not disclosed in its statement sufficient details to permit respondent to prepare for trial.  Although petitioner alleges that it determined that "it is appropriate to reserve surplus (at least $200,000 per year)" for losses and relocation expenses, it provided no facts in its statement indicating that its management decided during the years in issue to accumulate $200,000 for store closings.  Accordingly,

we hold that the burden of proof remains with petitioner as to the eighth ground.

9. Fashion Obsolescence

Petitioner states that it reasonably accumulated $500,000 during each of the years in issue to cover drastic changes in sales because of fashion obsolescence. Petitioner states that, although men's fashions are not as volatile as in the women's industry, dramatic changes have occurred from one year to the next; for example, the introduction of leisure and Nehru suits left significant inventories of product at wholesale and retail almost worthless.

Respondent argues that petitioner does not provide specific information about the losses that it incurred during the 1970's, i.e., the amount of the losses and the amount of inventory that was affected. Respondent contends that petitioner fails to explain how the amount of its accumulation was calculated.

We hold that petitioner has not disclosed in its statement sufficient details to permit respondent to prepare for trial. Petitioner did not quantify its alleged losses during the 1970's or provide its assessment of the likelihood that such a dramatic change could occur again. Additionally, petitioner provided no facts reflecting that petitioner's management decided during the years in issue to accumulate $500,000 because of clothes going

out of fashion.  Accordingly, we hold that the burden of proof remains with petitioner as to the ninth ground.

10.  Earthquake

Petitioner states that it reasonably accumulated $300,000 during each of the years in issue to protect against earthquake damage to the Costa Rican facility.  Petitioner states that Costa Rica lies upon an extremely active fault line and that earthquakes are frequent.  Petitioner notes that an earthquake severely damaged a house that petitioner provides for its managers.

Respondent argues that petitioner's discussion of its potential exposure to earthquake damage is vague and speculative. Respondent contends that petitioner has not presented any information on its past loss experience because of earthquakes or whether its manufacturing facility has ever suffered earthquake damage.  Respondent argues that petitioner fails to provide details about the extent of the damage to the managers' house, the cost to repair the damage, whether earthquake insurance was available, and the date that the damage occurred.

We hold that petitioner has not disclosed in its statement sufficient details to permit respondent to prepare for trial. Petitioner's discussion of its potential liability exposure is vague and speculative.  Petitioner has not presented any facts about its loss experience or the loss experience of comparable

companies to justify the $300,000 accumulation for self-insurance.  Accordingly, we hold that the burden of proof remains with petitioner as to the tenth ground.

We have considered all of the parties' remaining arguments and find them to be without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued.</u>